IRVING BROMBERG, Appellant, v. BANK OF AMERICA
    NATIONAL TRUST & SAVINGS ASSOCIATION (a
    National Banking Association) et al., Respondents.

Samuel Reisman and Laurence B. Martin for Appellant.

Louis Ferrari, Edmund Nelson and G. L. Berrey for Respondents.

YORK, P. J.—This is an appeal by the plaintiff from a judgment of dismissal entered pursuant to defendants' motion for a summary judgment under section 437c of the Code of Civil Procedure. It is here contended that (1) "there were triable issues of fact raised and joined by the amended complaint and the affidavit of the plaintiff in opposition to said motion for summary judgment, and that the court committed *reversible* error in granting said motion on behalf of defendants"; (2) the said judgment of dismissal herein is contrary to the law as set forth in the Bank Act (Stats. 1909, p. 87; as amended Deering's Gen. Laws, Act 652).

The original complaint was in seven counts: the first for the balance of a bank account, to wit: $15,377.41; the second, third, fourth, fifth and sixth causes of action were for money had and received, for conversion, misappropriation and embezzlement, and the seventh cause of action stated, in effect, that appellant maintained two commercial checking accounts and a special savings account with respondent bank; that a clerk in appellant's employ received for deposit in the commercial accounts sums of money aggregating approximately $13,000 which said clerk embezzled, and appellant being unaware of such thefts drew checks on said commercial accounts thereby creating overdrafts.

The respondent bank from time to time charged the special savings account in order to take care of the overdrafts. Appellant brought the instant action to recover the amounts thus withdrawn from the special savings account.

Respondents' demurrer to the complaint was sustained, whereupon appellant filed his amended complaint in practically the same language as the original but omitting the seventh cause of action. Respondents answered and some time later made their motion for summary judgment pursuant to the provisions of section 437c of the Code of Civil Procedure, on the ground that the "action has no merit." Said motion was granted and judgment of dismissal of the action followed.

In passing upon a summary judgment of dismissal under the provisions of section 437c of the Code of Civil Procedure, the Supreme Court in *Walsh* v. *Walsh*, 18 Cal.2d 439, 441 [116 P.2d 62], stated: "The controlling question to be determined upon this appeal is whether or not the trial court abused its discretion by entry of the summary judgment in response to defendant's motion therefor. This remedy, available since 1933 to plaintiffs in actions commenced in the superior court, was extended in like terms of limitation to defendants in 1939 by amendment of the summary judgment statute. The relevant provisions of section 437c of the Code of Civil Procedure (as amended by Stats. 1939, ch. 331, sec. 1), which so far as here material reads as follows: 'In superior courts . . . when an answer is filed in an action to recover upon a debt . . . if it is claimed that . . . the action has no merit, on motion . . . supported by affidavit . . . the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.' Thus, in passing upon a motion for summary judgment, the primary duty of the trial court is to decide whether there is an issue of fact to be tried. If it finds one, it is then powerless to proceed further, but must allow such issue to be tried by a jury unless a jury trial is waived. By an unbroken line of decision in this state since the date of the original enactment of section 437c, the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns. (*Security First National Bank* v. *Cryer*, 39 CalApp.2d 757 [104 P.2d 66]; *McComsey* v. *Leaf*, 36 Cal.App.2d 132 [97 P.2d 242]; *Kelly* v. *Liddicoat*, 35 Cal.App.2d 559 [96 P.2d 186]; *Shea* v. *Leonis*, 29 Cal.App.2d 184 [84 P.2d 277]; *Bank of America* v. *Casady*, 15 Cal.App.2d 163 [59 P.2d 444].) As was said in *Shea* v. *Leonis, supra,* at page 187: 'A motion for summary judgment is not a trial upon the merits. It is merely to determine whether there is an issue to be tried.' The same thought was expressed in *Bank of America* v. *Casady, supra,* at page 168: 'If an issue of fact is raised, then a summary judgment is improper, and the case must proceed to trial. (*Krieger* v. *Dennie*, 123 Cal.App.(Supp.) 777, 780 [10 P.2d 820].)' In *McComsey* v. *Leaf, supra,* the court by an extensive review of leading authorities from

other states wherein provision had been made for the award of summary relief, gives striking demonstration of the universal practice to permit this expedited procedure only where it is perfectly plain that there is no substantial issue to be tried. Illustrative of this view is the following quotation from *Dwan* v. *Massarene,* 199 App.Div. 872 [192 N.Y.Supp. 577, 582], a well-considered and widely cited New York case which limits itself strictly to a discussion of the summary judgment rules: 'The court is not authorized to try the issue, but is to determine whether there is an issue be tried. If there is, it must be tried by a jury.' ''

By the instant action appellant seeks to recover money which he deposited with respondent bank in a special savings account upon the express condition that no money be withdrawn therefrom by anyone except himself and then only upon his written demand and the actual presentation of the pass-book. The amended complaint alleges that respondents ''withdrew, converted, embezzled, misappropriated and misapplied to their own use and benefit'' the sum and amount of $13,000 out of said special savings account, without his knowledge or consent, without his authorization and without presentation of the said pass-book; then follow allegations of demand upon and refusal of the bank to pay.

The answer denies categorically the allegations of the amended complaint, admits demand for repayment, alleges the bank had paid to appellant or upon his order ''all of the money ever deposited'' with defendant bank except a certain sum remaining on deposit to appellant's credit and which he has never demanded; and as a separate defense alleges that in consideration of the bank becoming appellant's depositary appellant agreed within ten days after receiving a statement of his account that he would give to the bank notice of any improper charge against or incorrectness in the account; that such statements were rendered by the bank but appellant never gave notice of any objection to any charge against his accounts until long after the expiration of said ten day period.

In support of respondents' motion for summary judgment, the affidavit of M. J. Peters, chief clerk of Washington-Vermont Branch of respondent bank avers that appellant maintained three accounts at said branch: (1) Special Savings Account No. 48; (2) an ordinary checking account in the name of Irving Bromberg; (3) a commercial checking account in the name of Irving Bromberg Company which was solely owned by said Irving Bromberg; that on March 30,

1940, appellant permitted an overdraft of $4,199.15 in the commercial account and an overdraft of $4,104.65 in the checking account and said affiant caused a charge to be made against the special savings account in the amount of $10,000 and credited $5,000 thereof to the Irving Bromberg account and $5,000 to the Irving Bromberg Company account to cover said overdrafts; that on April 29, 1940, appellant was overdrawn in his Irving Bromberg Company account in the sum of $2,880.90 and affiant on April 30, 1940, caused a charge to be made against the special savings account No. 48 in the amount of $3,000 and credited it to the said Irving Bromberg Company account. Attached to said affidavit were transcripts of the three accounts.

The affidavit of T. H. Holmes, assistant manager of said branch bank, reiterates the averments re withdrawals and credits of the various sums of money and in addition avers that a deposit of $2,460.94 remains in said special savings account subject to appellant's demand.

Appellant's affidavit in opposition to the motion does not deny the averments of the supporting affidavits, but alleges that the special savings account No. 48 was opened by him with respondent bank upon the express terms and conditions that no moneys were to be withdrawn therefrom by anyone except himself and then only upon his written demand and the actual presentation of the pass-book issued by the bank with respect to said account. He further avers that he was not informed until July 12, 1940, of the withdrawal by the bank of the sum of $13,000 from his special savings account No. 48 and that such withdrawals were made entirely without any authority or permission from him and entirely without his knowledge and in direct violation of the terms of the agreement entered into between him and the bank at the time he opened said account; that he had no arrangement with the bank for the extension of credit, had not borrowed any moneys from the bank and at no time prior to the commencement of the instant action had he ever been indebted to the bank; that the sums withdrawn from his special savings account on March 30 and April 30, 1940, were wrongfully withdrawn, converted, embezzled, misappropriated and misapplied by the said respondent bank and its employees, to their own use and benefit and entirely without the consent or knowledge of affiant.

So far as can be ascertained from the pleadings or appel-

lant's affidavit in opposition to the motion, the agreement between him and the respondent bank was the usual savings account contract, i.e., the money deposited therein could not be withdrawn by anyone except the depositor, upon his written demand and presentation of the pass-book. If there were additional terms in the instant case, appellant has failed to state them.

Appellant does not deny that overdrafts existed in his commercial accounts and according to the general view, "the payment of an overdraft by a bank amounts to a loan to the depositor; for that reason the amount thereof may be recovered from the depositor. . . . An action to recover the amount of the overdraft from the depositor is based upon the implied promise which arises from the drawing of the check and the honoring of the same by the bank." (7 Am.Jur. 442, sec. 609.)

█ Under the provisions of section 3054 of the Civil Code, "A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due him from such customer in the course of the business."

"No formal procedure is pointed out or required for the exercise by a banker of the right of lien vested in him by this section of the code, but its provisions were obviously intended to operate automatically in those cases to which it is applicable, and where the right is exercised, the validity of the action of the bank in that regard may be challenged in an action instituted by the customer for the recovery of the money or property so appropriated. The banker in such case, having already exercised his right of lien, is not in a position in which he needs to set up the right as a counterclaim and ask for affirmative relief. All that is required of the banker, therefore, is to defend against recovery. (*Melander* v. *Western Nat. Bank,* 21 Cal. App. 462 [132 P. 265].) To hold that the right of a bank to apply the property of a customer in its hands is dependent upon the consent of the customer would, it has been said, destroy the right given by the statute. (*First Nat. Bank* v. *Coplen,* 39 Cal.App. 619 [179 P. 708].)

"The right of the bank to the general lien authorized by section 3054 of the Civil Code is not to be tested by the character in which the customer becomes indebted to it, but solely by the fact that he is indebted to it in a balance due to it and accruing in the course of business. . . . *an indebtedness due the bank within the meaning of the code section may consist of over-*

*drafts of the depositor.* (*Melander* v. *Western Nat. Bank,*
*supra.*)'' (Emphasis added.) (4 Cal.Jur. 268, 269.)

In the Melander case, *supra,* the question for determination
was stated as follows at p. 466: "May the deposit of a depositor
be appropriated by a bank, in the exercise of its right of lien,
to the extinguishment of an obligation to which the depositor
has bound himself merely as a guarantor?" The court decided
the question in favor of the bank, and in the course of its dis-
cussion stated at p. 467:

"It is, of course, not disputed that it is settled law that a
banker may, in the exercise of the right of lien vested in him,
appropriate the money or property in his possession belonging
to a customer in the extinguishment of any matured indebted-
ness of the customer to the bank. (Civ. Code, sec. 3054, *supra;*
*John Marble* [*M.C.*] *Company* v. *Merchants' National Bank of
Los Angeles,* 15 Cal.App. 347 [115 P. 59]; *McKean* v. *German
American Savings Bank,* 118 Cal. [334] 340 [50 P. 656]; 2
Bolles on Modern Law of Banking, p. 740; 1 Morse on Banks
and Banking, sec. 324, et seq.; Zane on Banks and Banking,
sec. 140.) . . .

"In Morse on Banks and Banking, the rule is thus stated:
'When payment upon an *overdraft,* a discount, an acceptance,
or other species of advance or loan by the bank to him (the
customer) creates an indebtedness on his part, all the funds
which the bank has or obtains to his credit may be applied upon
such indebtedness until such indebtedness is fully discharged,
and without any request or direction from him.' ''

"Since the relation between a depositor and the bank is
that of creditor and debtor, whenever a debt of the depositor
becomes due it follows that the bank has the right of setoff to
the extent of any debt it then holds against the depositor as
against the debt it owes the depositor by reason of the deposit.
The debt due from the bank to the depositor on account of the
deposit, and the indebtedness of the depositor to the bank are
cross-demands, such that if either should sue the other on such
demand the other might plead the cross-demand as a counter-
claim, consequently, the two demands are deemed compensated
so far as they equal each other. (*Arnold* v. *San Ramon Valley
Bank,* 184 Cal. 632, 194 P. 1012 [13 A.L.R. 320]; *Pendleton* v.
*Hellman Com. Tr. & Savings Bank,* 58 Cal.App. 448, 208 P.
702.) The bank may, in the exercise of the right to enforce its
lien, appropriate the money in its possession belonging to a
customer in the extinguishment of the customer's matured in-

debtedness. [Citing numerous authorities.]'' (4 Cal.Jur. 273.)

In the case of *In re Bank of San Pedro,* 11 Cal.2d 313, 315 [79 P.2d 1057] there was presented for determinatioɪ the question: ''whether or not a depositor in the savings department of a state bank in liquidation may set off his deposit against a loan in the commercial department of said bank.'' Appellant (superintendent of banks) urged that the bank was organized into departments; that petitioner owed the commercial department and that it was the savings department that owed petitioner, and therefore there could be no set-off because of lack of mutuality. It was there held that mutuality is not always controlling. ''In the instant case it is not controlling. The day before the Bank of San Pedro was taken over by the appellant, if either the petitioner had sued the bank, or the bank had sued the petitioner, it is clear that the other could have set off his or its claim. . . . the insolvency of the Bank of San Pedro did not affect the right to set-off existing in either party.''

Under the rules of law above enunciated, respondent bank was fully within its rights when it withdrew the sums of money from appellant's special savings account and credited them against appellant's indebtedness due the bank, to wit: overdrafts in appellant's commercial accounts.

There was, therefore, no abuse of discretion on the part of the trial court in granting respondent's motion for a summary judgment and dismissing the action because no issue of fact was raised by the affidavits in support of and in opposition to said motion.

We are not called upon to determine whether appellant would be entitled to a judgment against respondent bank for the amount of interest he may have lost by reason of respondent's withdrawal of sums in excess of the actual amounts due it because of the overdrafts.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., concurred.

WHITE, J., Concurring.—Appellant strongly relies upon the case of *American Surety Co.* v. *Bank of Italy,* 63 Cal.App. 149, [218 P. 466], but that case holds, as we have herein pointed out, that it is settled law expressly provided by section 3054 of the Civil Code that a banker has a lien upon, and

therefore possesses the right to appropriate, any money or property in his possession belonging to a customer to the extinguishment of any matured indebtedness of such customer to the bank, subject, of course, to the provisions "that such property or money so deposited has not been charged, with the knowledge of the bank, with the subserviance of a special burden or purpose, or does not constitute a trust fund, of which the banker had notice." In the same case it is also stated (p. 159) that while "a depositor may establish an account in a bank under a special designation or earmarked as a particular account, and yet, in the absence of an agreement with or instructions to the banker that the account so earmarked is a special deposit or is to be used for a specific purpose, the moneys deposited therein are to be regarded as belonging to the general account of the depositor and may be so treated by the bank." In the instant case no contention is made by appellant that the funds in his special savings account or any of his accounts come within any of the exceptions to the general rule concerning a banker's lien upon money or property in his possession belonging to a customer. Therefore, no triable issue of fact was presented, and the motion made under the provisions of section 437c of the Code of Civil Procedure was properly granted.

Appellant's petition for a hearing by the Supreme Court was denied June 3, 1943.