[S. F. No. 9349. In Bank.—January 4, 1921.]

MARTEN ARNOLD, Respondent, v. SAN RAMON VALLEY BANK (a Corporation), Appellant.

[1] BANKS AND BANKING—RELATIONSHIP BETWEEN GENERAL DEPOSITOR AND BANK—DEBTOR AND CREDITOR.—The relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor.

[2] ID.—CHECK AGAINST GENERAL DEPOSIT—ABSENCE OF LIEN OR EQUITABLE ASSIGNMENT.—A check drawn against a general deposit creates no lien upon the money on deposit and does not operate as an equitable assignment of the deposit or any interest therein or part thereof.

[3] ID.—INDEBTEDNESS OF DEPOSITOR TO BANK—APPLICATION OF DEPOSIT IN PAYMENT—RIGHT OF BANK.—Under section 3054 of the Civil Code, which provides that a banker has a general lien, dependent on possession, upon all the property in his hands belonging to a customer for the balance due to him from such customer in the course of the business, a bank has the right to apply a deposit in payment of a matured note of the depositor due the bank and to refuse payment of checks drawn on the deposit on the ground of insufficiency of funds after making such application.

[4] ID.—DEPOSIT OF TRUST FUNDS—LACK OF KNOWLEDGE OF BANK —APPLICATION IN PAYMENT OF DEPOSITOR'S INDEBTEDNESS — APPLICABILITY OF GENERAL RULE.—The rule that a bank has the right to apply a deposit to a debt due it from the depositor is applicable to a deposit belonging to a third person which is held in trust by the depositor for such third person, where the bank is without knowledge of the trust relation or of the character of the money deposited.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Reversed.

The facts are stated in the opinion of the court.

Chas. E. Snook for Appellant.

W. S. Tinning and A. B. Tinning for Respondent.

2. Ordinary bank check as assignment of funds of drawer, notes, 5 Ann. Cas. 189, 939; Ann. Cas. 1913D, 418.

SHAW, J.—Defendant appeals from the judgment. The record on appeal consists of the judgment-roll alone.

The judgment was for five hundred dollars and was based on the following facts set forth in the findings:

Several years prior to 1916 one Wallace Taylor became indebted to the defendant upon a promissory note to the amount of seven hundred dollars. In February, 1916, he gave a new note in renewal thereof and it became due June 30, 1916. From December, 1915, to August 7, 1916, Taylor had a regular ordinary deposit account with the defendant. Prior to May 8, 1916, the account of said Taylor was kept in his own name, but on that day, at the request of the defendant, the same was changed and was thereafter kept in the name of Clara Taylor, wife of said Wallace Taylor. At that time defendant knew that Taylor was financially embarrassed, and the change was made in the name of the account in order to protect the deposit against demands by creditors of Taylor. Said Clara Taylor had no interest in the account or in any of the moneys which were then, or were thereafter to be, deposited therein. Taylor was engaged in the business of buying and selling livestock, both for his own account and for others on commission, acting as a broker. This was known to the defendant. On August 3, 1916, the plaintiff intrusted to Taylor, as such broker, the sum of five hundred dollars, instructing him to use the same in buying livestock and selling the same for the plaintiff. On that day Taylor deposited with the defendant to the said account in the name of Clara Taylor said sum of five hundred dollars so intrusted to him by the plaintiff, and the same was placed to the credit of Clara Taylor, and it was then agreed between Clara Taylor and the defendant that any checks which might thereafter be drawn by Wallace Taylor against the defendant should be paid out of the moneys so deposited in the name of Clara Taylor. Thereafter Wallace Taylor, pursuant to his agreement with plaintiff, purchased livestock for the account of plaintiff to the aggregate amount of five hundred dollars, and between August 3 and August 6, 1916, he gave checks therefor to the persons from whom he bought the same on the said account of Clara Taylor with the defendant, amounting to five hundred dollars. Between August 3 and August 12, 1916, said checks were presented to the defendant

for payment and payment was refused. Wallace Taylor never notified the defendant that the said five hundred dollars was not his own property, nor that the same had been intrusted to him as a broker for the plaintiff or any other person, and the defendant did not know said facts until long after it credited said account on said note. On the day said deposit was made the defendant requested said Clara Taylor to apply the deposit, or a portion thereof, toward the payment of said note of Wallace Taylor. She refused to do so, and informed the defendant that checks had been drawn by Wallace Taylor against said account. On August 7, 1916, while the defendant still held said promissory note of Wallace Taylor and while it was still unpaid, the defendant applied thereon, in satisfaction thereof to that extent, the sum of $713.44, the same being the balance then remaining on deposit in the aforesaid account in the name of Clara Taylor, and said sum was thereupon credited upon said note and charged to said account. On August 5, 1916, checks on said account drawn by Wallace Taylor, amounting to $250, were presented to the bank for payment, but payment was refused on the ground that there were not sufficient funds in the account to pay said checks. Neither Arnold nor Taylor consented to said application of the money in said account. Taylor expressly objected thereto at the time the application was made and made his objection known to the defendant.

The deposit in the defendant bank in the name of Clara Taylor did not belong to her and she had no interest therein. Her name was used solely for convenience. It was her husband's account carried under her name, and his checks thereon were to be honored after the change of name as before. This clearly appears from the facts found and it is not disputed. The case must, therefore, be decided in the same manner as if the deposit account had remained in the name of Wallace Taylor. It was a general account between him and the bank. [1] "It is well settled here that the relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor. The moneys deposited immediately become the property of the bank, and the latter becomes the debtor of the depositor for the amount deposited, the same being payable on demand and on checks of the creditor." (*Smith's Cash Store* v. *First Nat. Bank,* **149** Cal. 34, [5 L. R. A. (N. S.) 870, 84 Pac. 664]; *Janin* v.

*London etc. Bank,* 92 Cal. 22, [27 Am. St. Rep. 82, 14
[L. R. A. 320, 27 Pac. 1100] ; *People* v. *Wilson,* 117 Cal. 243,
[49 Pac. 135] ; *Pullen* v. *Placer Co. Bank,* 138 Cal. 172, [94
Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83] ; *Plumas Co. Bank* v.
*Rideout Bank,* 165 Cal. 138, [47 L. R. A. (N. S.) 552, 131
Pac. 360].) **[2]** A check drawn against such deposit creates
no lien upon the money on deposit and it does not operate
as an equitable assignment of the deposit or any interest
therein or part thereof. (*Pullen* v. *Placer Co. Bank, supra;*
*Florence* v. *Brown,* 124 U. S. 385, 391, [31 L. Ed. 424, 8
Sup. Ct. Rep. 531, see, also, Rose's U. S. Notes] ; *Hopkinson*
v. *Forster,* L. R. 19 Eq. Cas. 76; *O'Connor* v. *Mechanics'
Bank,* 124 N. Y. 324, [26 N. E. 816].)

**[3]** Since the relation between Taylor and the bank, grow-
ing out of the deposit, was that of creditor and debtor, and
the debt of Taylor was due, it follows that the bank had the
right of setoff to the extent of any debt it then held against
Taylor. The debt due from the bank to Taylor on account
of the deposit and the note of Taylor to the bank were cross-
demands. If either had sued the other upon such demand,
the other could have pleaded the cross-demand as a counter-
claim. Consequently, the two demands are "deemed com-
pensated so far as they equal each other." (Code Civ. Proc.,
sec. 440; *McKean* v. *German Sav. Bank,* 118 Cal. 341, [50
Pac. 656] ; *Ainsworth* v. *Bank,* 119 Cal. 474, [63 Am. St.
Rep. 135, 39 L. R. A. 686, 51 Pac. 952] ; *People* v. *California
etc. Co.,* 168 Cal. 241, [L. R. A. 1915A, 299, 141 Pac. 1181] ;
*Estate of Gamble,* 166 Cal. 253, 257, [135 Pac. 970] ; Morse
on Banks, 5th ed., sec. 304.) This establishes the proposition
that, so far as Taylor and the bank were concerned, the bank
had the right to balance the account and discharge its lien
thereon by crediting the amount thereof on the note due to
it from Taylor.

Our Civil Code provides that "A banker has a general lien,
dependent on possession, upon all property in his hands be-
longing to a customer, for the balance due to him from such
customer in the course of the business." (Civ. Code, sec.
3054.) This is but a restatement of a well-known rule of
commercial law. Under this rule the defendant had the right
to refuse payment of checks and to apply the amount of the
deposit as a credit on its note against Taylor, thus discharging
the lien and balancing the account.

[4] The plaintiff contends that where the money deposited actually belonged to another person and the depositor held it in trust for the true owner at the time of making the deposit, this rule does not hold good against the true owner, and that, upon proof that it was so held in trust, he may recover it from the bank, notwithstanding the fact that the banker had no knowledge of such trust relation or of the character of the money deposited. We understand the rule to be otherwise. No exception of this character is found in the statement of the rule in section 3054. The question was directly involved in *Willey* v. *Crocker-Woolworth Nat. Bank,* 141 Cal. 508, [75 Pac. 106]; and it was there decided contrary to the claim of plaintiff. One A. B. Perry had a general deposit account with the bank in the name of A. B. Perry & Company. When the account was opened he was the sole owner of the business carried on under that name. He used that name for appearances only, but expected at some time to take a partner in with him. These facts were stated to the bank when the account was opened. Soon afterward he transferred an interest in the business to a corporation as a partner therein. Thereafter the partnership business was conducted under the name of A. B. Perry & Company, as before, and the fact that the corporation was a partner was kept secret from the bank from that time forward. After this partnership was thus formed Perry became personally indebted to the bank on a note and the bank charged the amount of said note on the said deposit account and credited the note as having been paid in full. The court held that the bank had a right to set off the note against the account by crediting one against the other, notwithstanding the fact that the corporate partner had an equitable interest in the account. The essential facts in that case are the same as in the case at bar. In 7 Corpus Juris, at page 659, the rule is stated as follows: "It is usually considered, however, that where a bank has no notice that funds deposited are held by the depositor in trust, it may apply such deposit to the depositor's debt without becoming liable to the beneficial owner." There is a footnote to this statement which gives a long list of decisions in the several states, all of which support the text. In 111 Am. St. Rep., at page 419, appears a note to *Garrison* v. *Union T. Co.,* 139 Mich. 392, [5 Ann. Cas. 813, 70 L. R. A. 615, 102 N. W. 978], in which note the cases

are also collected, showing that the majority are largely in support of the position of the defendant here. Another full citation of cases may be found in *McStay S. Co.* v. *Stoddard*, 35 Nev. 284, at page 297, [132 Pac. 545]. We need not repeat these citations here. The point is so well established by authority, both in this state and elsewhere, that we deem it unnecessary to discuss it on principle.

The plaintiff relies on *Burtnett* v. *First Nat. Bank,* 38 Mich. 630; *Shotwell* v. *Sioux F. S. Bank,* 34 S. D. 109, [L. R. A. 1915A, 715, 147 N. W. 288]; *Cady* v. *South Omaha Bank,* 46 Neb. 756, [65 N. W. 906], and cases in Texas and South Carolina, all of which appear to hold the opposite doctrine to that above stated. In Michigan the later case of *Garrison* v. *Union T. Co., supra,* follows the prevailing rule and apparently overrules the Burtnett case, although it does not mention it. So, also, in Nebraska a later decision indicates that the Cady case has been repudiated there. (*Globe Sav. Bank* v. *National Bank of Commerce,* 64 Neb. 413, [89 N. W. 1030].) We are not disposed to follow these cases, in view of the thoroughly established rule to the contrary.

For these reasons we think the court erred in its conclusions of law in favor of the plaintiff and that the judgment should have been for the defendant.

The judgment is reversed, and the court below is directed to enter judgment for the defendant.

Lawlor, J., Olney, J., Lennon, J., Wilbur, J., Sloane, J., and Angellotti, C. J., concurred.